IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-00378-RBJ

LAVINA A. PHELAN,

        Claimant,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

        Defendant.

---

## ORDER

---

        The Court here reviews the Social Security Administration's denial of Lavina A. Phelan's

application for disability benefits under Title II of the Social Security Act.  Jurisdiction is proper

under 42 U.S.C. § 405(g).  The Court apologizes for the delay in resolving this case.

        **Standard of Review**

        This appeal is based upon the administrative record and briefs submitted by the parties.

When reviewing a final decision by the Commissioner, the role of the District Court is to

examine the record and determine whether it "contains substantial evidence to support the

Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v.*

*Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998) (citing *Hamilton v. Secretary of Health and*

*Human Services*, 961 F.2d 1495, 1497 (10th Cir. 1992)).  A decision cannot be based on

substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere

scintilla of evidence supporting it." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988).  More

than a scintilla, but less than preponderance is required.  *Zoltanski v. F.A.A.*, 372 F.3d 1195,

1200 (10th Cir. 2004).  Although the evidence may support two inconsistent conclusions, that "does not prevent an administrative agency's finding from being supported by substantial evidence."  *Id.*  The Court cannot "reweigh the evidence or substitute [its] judgment for that of the agency."  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

**Facts**

Ms. Phelan was born on August 26, 1965.  R. at 30.  She received a bachelor's degree in computer information systems from the University of Nebraska at Kearney.  *Id.*  Ms. Phelan previously worked as a waitress, bartender, and pizza cook.  R. at 54, 172.  Additionally, she previously worked for L-3 Communications, for the Navy as an electrician, and for Northrop Grumman Space and Mission Systems as a systems engineer.  R. at 30.

Ms. Phelan testified that she first started struggling with work in 2006.  R. at 44–45.  Eventually, she regressed to where she was incapable of meeting deadlines and was too mentally foggy to accomplish anything at work.  *Id.*  She stopped working in January 2007, only to return on March 19, 2007.  However, upon returning she could only work a few days a week, so she stopped again on April 30, 2007.  R. at 46, 122, 126.

After she stopped working, Ms. Phelan applied for disability benefits, stating that the onset date of her disability was January 30, 2007.  R. at 28.  The Social Security Administration determined that her condition was not severe enough to keep her from working, and her request for disability insurance benefits was initially denied on November 29, 2007.  R. at 15, 60.  In January 2008, Ms. Phelan requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was conducted on March 30, 2009 in Colorado Springs, Colorado.  R. at 26, 66.  On July 22, 2009, the ALJ denied Ms. Phelan's request for insurance disability.  R. at 12.  On September 17, 2009, Ms. Phelan sent her Request for Review of Hearing Decision/Order to the

Social Security Administration.  R. at 11.  On December 22, 2010, the Appeals Council issued its Notice of Appeals Council Action, in which it denied Ms. Phelan's request for review of the ALJ's decision.  R. at 1.  She has now appealed to this Court for review of these decisions.

Ms. Phelan maintains that she is unable to work because of the following severe impairments: lupus; rashes; fatigue; muscle pain; stiffness and pain in her knees, hip, back, and shoulders; fibromyalgia; depression; and mental fogginess.  R. at 33, 133.

Regarding Ms. Phelan's lupus, Dr. Clothier noted that she suffered from lupus from February 1, 2006 through July 18, 2007.  R. at 416, 430–31.  Dr. Hocate noted on January 20, 2006 and most recently on March 7, 2008 that Ms. Phelan suffered from presumed lupus, but he also described it as mild and without active symptoms.  R. at 345, 350, 353, 355–56, 360, 363, 368–69, 373, 376, 391.

Ms. Phelan's treatment records also showed some evidence of her suffering from rashes. She was reported to have had a rash resulting from scabies that was treated and eliminated by April 2006.  R. at 373.  Also, although Dr. Hocate noted that there were no active symptoms to suggest lupus, she often noted that Ms. Phelan had a rash associated with lupus.  R. at 345, 350, 353, 355–56, 360, 363, 368–69, 373, 376, 391.  Also, from January 2006 through June 2006, Dr. Clothier consistently noted that Ms. Phelan had a rash; on June 14, 2006, Dr. Clothier wrote that Ms. Phelan suffered from a rash that covered much of her body from the neck down.  R. at 430–31, 433, 442–43, 445.

Ms. Phelan also complained about back pain.  R. at 50.  Dr. Clothier noted several times in 2006 and 2007 that Ms. Phelan suffered from back pain involving dysfunction of the lumbar spine.  R. at 407, 427–28, 436.  However, medical imaging from December 2007 showed that Ms. Phelan's lumbar spine was normal.  R. at 274.

Additionally, Ms. Phelan complained about pain in her knees, hip, and shoulders.  R.at 50–53.  Dr. Hocate often noted that Ms. Phelan suffered from joint and soft tissue pain that was consistent with chronic pain syndrome.  R. at 345, 350, 353, 355–56, 360, 363, 368–69, 391.  Medical imaging from November 2002 showed that Ms. Phelan's knees were mildly degenerative.  R. at 283.  Additional medical imaging from May 2006 showed that both of Ms. Phelan's knees had degenerative changes, and her right shoulder had "[v]ery mild degenerative changes."  R. at 280–82.  Lastly, medical imaging from December 2007 showed that Ms. Phelan's right shoulder had mild irregularities; her right hip had very mild degenerative changes; her left hip was maintained normally; and both knees showed signs of arthritis.  R. at 274–78.

Ms. Phelan's medical history also included numerous reports of fatigue.  Dr. Clothier first noted Ms. Phelan's fatigue in March 2007.  R. at 452.  In May 2007, Dr. Lisa Baron noted that Ms. Phelan was fatigued.  R. at 400.  Between January 2006 and March 2008, Dr. Hocate consistently noted that Ms. Phelan was fatigued.  R. at 345, 350, 353, 355–56, 360, 363, 368–69, 373, 376, 391.  Consistent with Ms. Phelan's fatigue and with her joint and soft tissue pain, Dr. Clothier diagnosed Ms. Phelan with fibromyalgia.  R. at 274, 416.

In addition to her pain and fatigue, Ms. Phelan also complained of depression and mental fogginess.  R. at 38, 51, 147.  Dr. Clothier noted several times between June 2006 and March 2008 that Ms. Phelan was depressed.  R. at 380, 436, 442–43.  Also, starting in February 2007, Dr. Hocate consistently noted Ms. Phelan complained of mental fogginess, often as a side effect of medication.  R. at 345, 350, 360, 363, 391.  However, Dr. Clothier frequently noted that Ms. Phelan denied any medication side effects.  R. at 427, 432, 435, 440.

Ms. Phelan underwent a psychiatric evaluation in 2007 that provided additional information about her depression and mental fogginess.  This evaluation found that Ms. Phelan

had started treatment for depression in February 2004, but that she still suffered from depression at the time of the evaluation.  R. at 334.  The psychiatrist administered a mental status examination to Ms. Phelan, and she scored 23 out of 30.  *Id.*  This score was lower than the psychiatrist expected but still within the normal range of functioning.  R. at 334-35.  On math problems administered by the psychiatrist, Ms. Phelan needed several prompts in order to identify the answers.  R. at 335.  Regarding memory tests, Ms. Phelan remembered three of five objects after a delay; she recalled four digits backward;  and she correctly answered three of the four questions in the logical memory portion of the test.  *Id.*  The psychiatrist administered another test in which Ms. Phelan was able to remember six digits forward and six digits backward.  *Id.*  This result was in the 63rd percentile for this digits test, which was in the average range of functioning.  *Id.*  In all, the psychiatrist found that Ms. Phelan: suffered depression; did not have inappropriate behavior; responded well to treatment; had no impairment of thought processes, communications, or social functioning; and had no significant cognitive difficulties. *Id.*

On July 7, 2007, Dr. Clothier filled out an Attending Physician Statement, noting that Ms. Phelan suffered from extreme fatigue, multiple joint pain and stiffness, muscle weakness, depression, and inability to concentrate and complete tasks.  R. at 411–12.  Additionally, Dr. Clothier noted that Ms. Phelan's physical abilities were restricted to never climbing, occasionally twisting or stooping, occasionally operating heavy machinery, and frequently reaching above her shoulders or head.  R. at 412.  Also, Ms. Phelan had the ability frequently to lift up to ten pounds, occasionally to lift eleven to twenty pounds, occasionally to lift twenty-one to fifty pounds, and never to lift anything above fifty pounds.  *Id.*

On August 19, 2008, Dr. Clothier filled out another opinion form, the Ability to Do Work-Related Activities (Physical). R. at 481. In this opinion he diagnosed Ms. Phelan with lupus, fibromyalgia, depression, and fatigue. R. at 481, 484. He noted that Ms. Phelan could never carry or lift anything above ten pounds but could occasionally lift or carry one to ten pounds. R. at 481. Dr. Clothier claimed that these lifting restrictions were supported by Ms. Phelan's weakness that he observed upon examination. *Id.* However, it is important to note that Dr. Clothier's treatment records do not mention muscle weakness. *See* R. at 378–485. Also, Dr. Clothier stated that based on his frequent physical examinations of Ms. Phelan, he believed that Ms. Phelan could use her upper extremities to occasionally perform fingering, handling, and reaching all directions (including overhead). R. at 482. Dr. Clothier also said in this opinion that within an eight-hour workday Ms. Phelan could sit for two-four hours, stand for one-two hours, and walk one-two hours. *Id.* Ms. Phelan could sit or stand for five minutes before having to change positions. *Id.* Dr. Clothier also noted that Ms. Phelan could never kneel, crouch, crawl, or squat, could rarely bend over or climb, and occasionally could flex her neck. R. at 483. Finally, Dr. Clothier noted that Ms. Phelan suffered limited mental clarity and morning lethargy as side effects from medication. R. at 484.

Regarding the impact of these medical issues on her daily activities, Ms. Phelan testified that she can read, watch television, drive a car, and walk her dog to the end of the block and back. She joined a gym and was going to attempt to swim for exercise. R. at 33–34. She has three children: two daughters and a son. R. at 34–35. The older daughter is the only child who does not live at home. R. at 40. The younger daughter gets herself up and off to school, and the son takes a bus to school. R. at 41. Ms. Phelan makes sure her son is up in time to get ready – that is the extent of her helping the children off to school. R. at 40–41.

Ms. Phelan spends time with her children by watching TV and playing board games. R. at 36. She goes to her daughter's swim meets, and she tries to go to other school activities. R. at 35. Ms. Phelan sometimes leaves the house to go to movies. She goes grocery shopping, but she needs to go to a store where she can periodically sit down. R. at 35, 42. Ms. Phelan also occasionally takes vacations. For instance, sometimes the family goes to Estes Park, where Ms. Phelan relaxes and enjoys the scenery and wildlife. R. at 36.

Ms. Phelan testified that she usually spends the day at home by herself. R. at 42. She makes herself breakfast and lunch, and she tries to cook dinner for the family. R. at 42–43. She feeds the pets in the evening. R. at 142. She tries to dust one part of the house every day, occasionally vacuums, and cleans the bathroom weekly. R. at 143. Her husband does the laundry and the dishes. R. at 42–43.

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) to determine if Ms. Phelan was disabled. At step one, the ALJ found that the Ms. Phelan had not engaged in substantial gainful activity since January 30, 2007, which is the alleged onset date. R. at 17. At step two, the ALJ found that Ms. Phelan's severe impairments included degenerative joint disease of the bilateral knees, depression, and fibromyalgia. *Id.* At step three, the ALJ determined that the "Ms. Phelan does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. at 18.

Step four requires an ALJ to assess Ms. Phelan's residual functional capacity ("RFC") in light of medical impairments and determine if the Ms. Phelan is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ made the following RFC assessment:

> [T]he claimant has the residual functional capacity to perform sedentary work . . . while no more than frequently engaging in reaching activities with her upper

> extremities; avoiding all climbing of ladders, ropes, and scaffolds; only occasionally crouching, kneeling, crawling, or climbing ramps or stairs; avoiding conditions of extreme cold; and while performing simple, unskilled work involving one, two, or three step instructions.

R. at 19.   Based on this assessment, the ALJ found that "[t]he Ms. Phelan is unable to perform any past relevant work . . . ."  R. at 24.

In step five, the ALJ considers the Ms. Phelan's age, education, work experience, and RFC to determine if the Ms. Phelan is able to adjust to other work.  20 C.F.R. § 404.1520(a)(4)(v).  If not, then she is disabled within the meaning of the Act.  *Id.*  The ALJ found that "Ms. Phelan is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. at 25.  This determination relied heavily on testimony given by a Vocational Expert ("VE"), Mr. Schweiger, at the hearing.  The VE testified that a hypothetical individual of plaintiff's age, education, and vocational history that shared her RFC could perform several unskilled and simple jobs with one, two, or three-step instructions. R. at 54–55.  Further, the VE testified that these jobs existed in significant numbers in the national economy.  *Id.*  The ALJ thus denied Ms. Phelan's claim for disability benefits.  R. at 25.

**Conclusions**

Ms. Phelan raises six issues on appeal, all of which concern the ALJ's step four or step five analyses.  Ms. Phelan argues (1) that the ALJ improperly rejected the opinions of her treating physicians, Dr. Clothier and Dr. Hocate; (2) the ALJ improperly relied on the opinion of the non-examining agency physician, Dr. Karl T. Chambers; (3) the ALJ did not adequately consider the impact of Ms. Phelan's mental impairments; (4) the ALJ mischaracterized evidence of Ms. Phelan's daily activities; (5) the ALJ erred by not obtaining a reasonable explanation for a discrepancy between VE testimony and the Dictionary of Occupational Titles (the "DOT"); and

(6) the case must be remanded for consideration of an additional opinion from Dr. Clothier that was submitted to the Appeals Council after the hearing.

I.  <u>Whether the ALJ Improperly Rejected the Opinions of Treating Physicians, Dr. Clothier and Dr. Hocate</u>

The first issue on appeal is whether the ALJ, in determining Ms. Phelan's RFC, gave improper weight to the opinions of Ms. Phelan's treating physicians, Dr. Clothier and Dr. Hocate.

**Treating Physician Peter Clothier, D.O.**

Ms. Phelan challenges the ALJ's granting "little weight" to Dr. Clothier's medical opinions.  R. at 24.  Ms. Phelan argues that Dr. Clothier's opinion deserved controlling weight, because it was sufficiently supported and consistent with the record.

"In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'"  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source opinion is granted controlling weight when it is both (1) supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with the other substantial evidence of record.  *Id.*  "If the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id.*

In this case, the ALJ gave little weight to Dr. Clothier's opinion because (1) his opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques and (2) his opinion was inconsistent with other substantial evidence of record.  R. at 22.

Dr. Clothier's opinion cited Ms. Phelan's limited mental clarity and morning lethargy as medication side effects that have impeded Ms. Phelan's ability to work.  R. at 484.  However, Dr. Clothier's treatment records consistently and specifically stated that there were no medication side effects noted by Ms. Phelan.  *E.g.*, R. at 427, 432, 435, 440.  In response to this,

Ms. Kirby argues that it is not necessary for a doctor's treatment records to report side effects when the side effects are expected from the medication. *Kirby v. Astrue*, 568 F.Supp. 2d 1225, 1232–33 (D. Colo. 2008). However, *Kirby* is distinguishable from this case, because in *Kirby*, although the doctor did not specifically mention the phrase "side effects," the doctor's treatment records were "replete with discussion" of the symptoms of side effects. *Id.* at 1233. In contrast, Dr. Clothier's treatment records specifically and consistently stated that there were "[n]o recent medication . . . side-effects noted." R. at 427, 432, 435, 440, 449, 456. Dr. Clothier's treatment records mentioned fatigue several times as well as dizziness and difficulty concentrating, all of which can be side effects, but his treatment records were not "replete" with descriptions of expected side effects. R. at 383, 400, 412; *Kirby*, 568 F.Supp. 2d at 1233.

Furthermore, the ALJ found other inconsistencies within Dr. Clothier's opinions. In July 2007 Dr. Clothier noted that in an eight-hour work day Ms. Phelan could sit and stand for only one hour, could not walk at all during the day, and could frequently lift ten pounds and occasionally lift fifty pounds. R. at 412. In August 2008 Ms. Phelan was suffering the same symptoms, and Dr. Clothier then noted that during an eight-hour day Ms. Phelan could sit two-to-four hours, stand one-to-two hours, walk one-to-two hours, and occasionally lift ten pounds. R. at 481–82.

These inconsistencies constitute substantial evidence in support of the ALJ's decision not to award controlling weight to Dr. Clothier's opinions. Next the Court must determine whether the ALJ gave sufficient and proper explanations for granting limited weight to Dr. Clothier's opinions. A treating opinion that is not entitled to controlling weight is not automatically rejected. *Watkins*, 350 F.3d at 1300. Instead, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* It is well

established that an ALJ need not address each factor under 20 C.F.R. § 416.927(d), expressly or at length, so long as "good reasons" are given in a decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). The reasons articulated by an ALJ must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

The ALJ gave several examples of how Dr. Clothier's treatment records were inconsistent with his opinion: (1) his records specifically denied the existence of side-effects; (2) the record documented no evidence of any muscle weakness; (3) Dr. Clothier routinely noted the Ms. Phelan was in good and stable condition; and (4) he never suggested that Ms. Phelan seek professional counseling for her mental issues. The fourth reason arguably is an improper foray into the medical field by the ALJ. *See Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (holding the ALJ overstepped its bounds by saying, "'if Ms. Phelan did indeed experience the degree of side effects he has alleged, there should be evidence of efforts to prescribe a different medication regimen'"). However, the first three reasons are based on legitimate findings of inconsistencies between Dr. Clothier's treatment records and his disability opinion. *See* 20 C.F.R. § 404.1527(c)(4) (listing the consistency between a medical opinion and the record as a factor to consider in determining an opinion's weight).

**Treating Rheumatologist Melissa Hocate, M.D.**

Ms. Phelan maintains the ALJ erred in granting "no weight" to Dr. Hocate's medical opinion, because the opinion was consistent with other substantial evidence. R. at 21. Because Dr. Hocate is a treating physician, this Court's analysis follows the same path as it did for the

ALJ's treatment of Dr. Clothier's opinion.  First, this Court must consider whether Dr. Hocate's opinion deserved controlling weight by analyzing whether the opinion was (1) supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with the other substantial evidence of record.  Second, if the treating opinion is not entitled to controlling weight, the Court must analyze whether the ALJ provided good and specific reasons for its decision to give no weight to the treating opinion.  20 C.F.R. § 416.927(d); *Oldham*, 509 F.3d at 1258; *Watkins*, 350 F.3d at 1300; *see also* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

In denying Dr. Hocate's opinion controlling weight, the ALJ cited inconsistencies between the opinion and other substantial evidence.  R. at 21–22.  Dr. Hocate's opinion that Ms. Phelan could not work because of pain and mental fogginess was inconsistent with several substantial portions of the record.  R. at 350.  Ms. Phelan's mental fogginess appears to have been inconsistent with a psychiatrist's examination that found the Ms. Phelan had "no significant cognitive difficulties," that she was within the normal range of cognitive functioning, and that her "thought processes and communication are not impaired.".  R. at 334–35.  Ms. Phelan complained that mental fogginess was a side effect of her medication, but the record shows that she frequently noted to Dr. Clothier that she suffered no medication side effects.  R. at 38, 427, 432, 435, 440.  The ALJ did not err in determining that Dr. Hocate's opinion did not merit controlling weight.

Did the ALJ give good and specific reasons for awarding Dr. Hocate's opinion no weight?  *See Oldham*, 509 F.3d at 1258.  One factor an ALJ must consider when according weight to an opinion is the degree to which a doctor presented evidence to support her opinion.  20 C.F.R. § 404.1527(c)(3). Here, Dr. Hocate concluded that Ms. Phelan's "pain and mental fogginess have caused her to be unable to work."  R. at 350.  Dr. Hocate provided occasional

subjective evidence regarding Ms. Phelan's mental fogginess but no objective evidence. *See* R. at 344, 349, 360, 362. Also, Dr. Hocate never described the functional limitations of any of Ms. Phelan's severe impairments. The ALJ concluded that one reason to give no weight to Dr. Hocate's opinion was the lack of evidence of both mental impairments and functional limitations arising out of Ms. Phelan's severe impairments. R. at 21.

Another factor an ALJ must consider is the consistency between the opinion and the record as a whole. 20 C.F.R. § 404.1527(c)(4). While Dr. Hocate's opinion that Ms. Phelan suffers pain is consistent with substantial evidence, her opinion that Ms. Phelan is disabled because of mental limitations is inconsistent with substantial evidence, as detailed above. The ALJ rejected Dr. Hocate's opinion because of its inconsistencies with other substantial evidence. R. at 21-22.

In sum, Dr. Hocate provided sparse evidence of mental impairments. The evidence she did provide was inconsistent with other evidence. Dr. Hocate did not explain how any severe impairments, whether physical or mental, limited Ms. Phelan's functionality. The ALJ gave good and specific reasons for giving no weight to Dr. Hocate's opinion.

II.   <u>Whether the ALJ Improperly Relied on the Opinion of Nonexamining Agency Physician, Karl T. Chambers</u>

Ms. Phelan argues that the ALJ improperly relied upon the opinions of a non-examining State agency physician. However, the Court does not now consider this argument, because it finds that the ALJ erred by not specifying how much weight she gave to the opinion of the non-examining state agency physician. If an ALJ relies on a non-examining physician, she must explain the weight she gives to it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight

she gave to the opinion of a non-examining State agency physician.  20 C.F.R. §

416.927(e)(2)(ii);  *see Hamlin*, 365 F.3d at 1215.

The ALJ never stated how much weight she gave Dr. Chambers' opinion.  The ALJ

"considered the opinion" and found the opinion was "well supported by the evidence," but the

ALJ never specified whether the opinion received little weight, some weight, substantial weight,

or any other amount of weight.  Consequently, this Court remands this issue to the ALJ.  In

doing so, this Court does not hold that the ALJ's analysis was incorrect; rather, this Court holds

that the ALJ needs to specify how much weight she gave this opinion and why.  Only then can

this Court review the ALJ's analysis.

III.     Whether the ALJ Adequately Considered Ms. Phelan's Mental Impairments

Ms. Phelan argues that the ALJ failed properly to consider Ms. Phelan's mental

impairments and therefore the case should be remanded.  This Court disagrees.

When a "claimant establishes existence of severe mental impairment that does not meet

the listings, [the ALJ] must use [VE] testimony or other similar evidence to meet his burden of

showing Ms. Phelan can perform jobs available in the national economy."  *Hargis v. Sullivan*,

945 F.2d 1482, 1492 (10th Cir. 1991) (citing *Wheeler v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir.

1989)).  Furthermore, when using VE testimony, the ALJ must express nonexertional capacity in

terms of work-related functions.  SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).  For

example, when assessing an RFC for an individual with mental impairments, the ALJ should

consider the individual's ability to: "understand, carry out, and remember instructions;  use

judgment in making work-related decisions; respond appropriately to supervision, co-workers

and work situations; and deal with changes in a routine work setting."  *Id.*

The ALJ expressed Ms. Phelan's nonexertional capacity in terms of work-related functions.  Specifically, the ALJ instructed the VE to "assume that this individual would require work which is simple and unskilled, with one, two or three step instructions."  R. at 54.  These instructions relate to the Ms. Phelan's ability to understand and carry-out instructions.  *See* SSR 96-8p, at *6.

Furthermore, the record contains substantial evidence in support of the ALJ's instruction.  For instance, the VA psychiatrist found that Ms. Phelan exhibited no inappropriate behavior and no impairment of thought processes, social functioning, or communication.  R. at 335.  Also, Ms. Phelan showed no significant evidence of cognitive dysfunction and no more than mild psychological impairment.  *Id.*  She was in the normal range of cognitive functioning, even if this was lower than the psychiatrist expected.  R at 334–35.  Moreover, the psychiatrist found:

> On the mental status examination, Ms. Phelan received a score of 23 out of 30, which is in the normal range of functioning, but lower than I would expect for someone who is college educated.  She was able to remember 3 of the 5 objects after a delay.  On the math problems, she was unable to correctly identify the numbers without several prompts.  She was able to remember 4 digits backwards. She was able to correctly identify the answer to 3 of the 4 questions on the logical memory portion of the test.

> Because of the cognitive difficulties, I administered the digit span subtest of the Wechsler Adult Intelligence Scale – Revised.  On digits forward, she was able to remember 6 digits forward.  On digits backwards, she was able to remember up to 6 digits backward as well.

*Id.*

In sum, the record contains substantial evidence that Ms. Phelan had minor cognitive impairment that could adversely affect her ability to understand, carry out, and remember instructions.  However, there was not substantial evidence that Ms. Phelan had an impaired ability to use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; or deal with changes at work.

When the ALJ asked the VE about the vocational effect of Ms. Phelan's impairments, the ALJ included an impairment of Ms. Phelan's ability to handle extensive instructions.  R. at 54. This Court finds that the ALJ conveyed to the VE the claimant's nonexertional capacity in terms of work-related functions.  Furthermore, this nonexertional capacity was supported by substantial evidence.  *See* R. at 334–35.  This Court rejects Ms. Phelan's arguments and finds that the ALJ adequately considered Ms. Phelan's mental impairments.

Ms. Phelan also argues that the case should be remanded because the ALJ's treatment of Ms. Phelan's mental impairments was in direct conflict with SSR 85-15.  This Court agrees with defendant that SSR 85-15 only applies to someone who suffered only nonexertional limitations. SSR 85-15, 1985 WL 56857, at *1 (Jan. 1, 1985).  Because Ms. Phelan suffers both exertional and nonexertional limitations, SSR 85-15 does not apply here.

This Court finds that the ALJ adequately considered the impact of Ms. Phelan's mental impairments.

IV.    Whether the ALJ Mischaracterized Evidence of Ms. Phelan's Daily Activities When Determining Ms. Phelan's Credibility and RFC

Ms. Phelan argues that when the ALJ determined Ms. Phelan's RFC and credibility, the ALJ erred by mischaracterizing her testimony regarding her daily activities.  When an ALJ determines whether a person who claims full disability is credible, the "ALJ is entitled to rely on objective evidence in the record, such as Ms. Phelan's recount of his daily activities, in making [its] assessment." *Hamilton v. Sec'y of Health & Human Services of U.S.*, 961 F.2d 1495, 1499 (10th Cir. 1992).  Additionally, the ALJ may consider a claimant's medical evidence, appearance, and demeanor.  *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992). However, an ALJ may not determine solely upon Ms. Phelan's performance of daily activities

that she is capable of substantial gainful employment. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

Although the ALJ mischaracterized some of Ms. Phelan's testimony regarding her daily activities, this Court finds that the ALJ's determination is supported by substantial evidence. The ALJ mischaracterized Ms. Phelan's testimony by: (1) stating that Ms. Phelan swims for exercise, when Ms. Phelan testified that she was "going to try to swim"; and (2) stating that Ms. Phelan has two children whom she helps get off to school, when Ms. Phelan testified that her only role in getting the children ready for school is making sure that her son gets out of bed by 7:30 am.  R. at 20, 34, 40–41.  While the Court finds that these characterizations by the ALJ were inaccurate, the Court finds that the remaining characterizations were accurate.

Furthermore, the ALJ made it clear that the Ms. Phelan's testimony regarding her daily activities was not the sole reason for the determination that Ms. Phelan lacked credibility.  The ALJ said that "her testimony of her ability to continue to engage in a variety of activities of daily living indicates she is more capable than she claims . . . ."  R. at 20.  After analyzing the Ms. Phelan's testimony regarding daily activities, the ALJ analyzed the medical evidence of record to help her make a credibility determination.

V.     Whether the ALJ Erred by not Investigating Conflicts Between the VE's Testimony and the Dictionary of Occupational Titles

Ms. Phelan next argues that the ALJ committed reversible error by relying on VE testimony that conflicted with information in the DOT without obtaining a reasonable explanation for the discrepancy.  For the reasons detailed below, this Court disagrees and rejects Ms. Phelan's argument.

SSR 00-4p requires an ALJ to investigate and obtain a reasonable explanation for a conflict between VE testimony and information in the DOT.  SSR 00-4p, 2000 WL 1898704, at

*4 (Dec. 4, 2000).  This rule is limited, however, in that the ALJ has no duty to investigate a

conflict if the VE obtained his information from the DOT and the Ms. Phelan failed to raise an

adversarial challenge to the VE's testimony at the hearing.  *Gibbons v. Barnhart*, 85 F. App'x 88,

93 (10th Cir. 2003) ("[C]laimants should not be permitted to scan the record for implied or

unexplained conflicts between the specific testimony of an expert witness and the voluminous

provisions of the DOT, and then present that conflict as reversible error, when the conflict was

not deemed sufficient to merit adversarial development in the administrative hearing")(quoting

*Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000)).

In this case, the VE used information from the DOT while testifying as to what work Ms.

Phelan could perform.  For example, the VE testified:

> It would include work such as a drafting clerk.  The DOT is 209.587-010.  It's
> unskilled, SVP: 2, sedentary. . . . It would include work such as document
> preparer, 249.587-018, sedentary, SVP: 2 . . . . And it would include work such as
> food and beverage order clerk, 209.567-014, sedentary, unskilled, SVP: 2 . . . .

R. at 55.

Furthermore, Ms. Phelan did not raise an adversarial challenge to the VE's information at

the hearing.  *See* R. at 53–57.  She asked two questions, neither of which pertained to a conflict

between the VE's testimony and the DOT.  R. at 56.  She did not assert the existence of a

conflict between the VE's testimony and the DOT.

Ms. Phelan essentially combs through the record looking for any conflict between the VE

and the DOT and then presents such conflict as reversible error.  That is not persuasive.  *See*

*Gibbons*, 85 F. App'x at 93.  Because the VE's testimony was derived from the DOT, and Ms.

Phelan never challenged the VE's testimony at the hearing, the ALJ had no duty to investigate

any conflict.  Consequently, this Court rejects Ms. Phelan's argument on this issue.

VI.   Whether the Case Must Be Remanded for Consideration of an Additional Opinion from Dr. Clothier that Was Submitted to the Appeals Council After the Hearing

Ms. Phelan submitted a supplemental opinion from Dr. Clothier to the Appeals Council, dated October 6, 2009.  Although the Appeals Council incorporated this opinion into the record, it did not explicitly discuss it.  R. at 1–5.  Ms. Phelan argues that the Appeals Council should have remanded the case to the ALJ for further consideration after it received Dr. Clothier's supplemental opinion.

An Appeals Council must evaluate the entire record, including new evidence that Ms. Phelan submitted.  *Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006).  However, it need not specifically discuss supplemental evidence.  *Id.* at 1208.  Nevertheless, because the case is being remanded on other grounds, the Court requests that the supplemental opinion be considered by the ALJ.

**Order**

The case is remanded to the Commissioner for proceedings consistent with this order, namely that the ALJ explain the weight given to the opinion of Dr. Karl T. Chambers, and that the ALJ consider Dr. Clothier's supplemental opinion.

DATED this 2nd day of January, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge